UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TERRANCE D. CARSON, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | CIVIL NO. SA-11-CA-783-XR |
| | * | |
| RICK THALER, | * | |
| Director, Texas Department | * | |
| of Criminal Justice, | * | |
| Correctional Inst. Division, | * | |
| | * | |
| Respondent. | * | |

## MEMORANDUM AND RECOMMENDATION

Terrance D. Carson, an inmate in the custody of the Texas Department of Criminal Justice--Correctional Institutions Division ("TDCJ-CID"), has filed an application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his state court conviction for murder. Carson alleges that (1) the trial court erred in failing to grant a *Batson* challenge, (2) his trial attorney rendered ineffective assistance due to a conflict of interest, and (3) the trial court erred in admitting, during the punishment phase, evidence of prior bad acts committed by Carson. As required by Rule 4 of the Rules Governing Section 2254 Cases, the Court has conducted a preliminary review of the petition.

Carson failed to file this petition within the applicable one-year limitations period created by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). However, he claims that he is entitled to equitable tolling of the limitations period due to

mental illness.   Before determining whether the State should be served with a copy of this habeas petition and be required to answer, the Court directed that Carson provide some evidence to substantiate his claim.  Having considered the evidence (docket no. 4) and the applicable law, the Court is of the opinion Carson's habeas petition should be dismissed.

## Background

On July 20, 2001, Carson was found guilty of murder by a jury in the 399th Judicial District Court of Bexar County, Texas, cause no. 1995-CR-6250.  Four days later, he was sentenced to serve 40 years in the TDCJ-CID.  His conviction was affirmed by the Texas Fourth Court of Appeals on September 18, 2002, cause no. 04-01-555-CR.  Carson did not pursue a direct appeal to the Texas Court of Criminal Appeals.  On February 17, 2011, he filed a state habeas application under Article 11.07 of the Texas Code of Criminal Procedure.   The Texas Court of Criminal Appeals denied the application on September 7, 2011 without a written order based upon the findings of the trial court, cause no. WR-76,232-01.  This federal habeas application was filed by counsel for Carson on September 20, 2011.

## Statute of Limitations

Under the AEDPA, a one-year period of limitations applies to a § 2254 application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. **Title 28 U.S.C. § 2244(d).**   Although the AEDPA describes four different events

which could trigger the limitations period, the relevant time, for purposes of this petition, is the date judgment became final.[1] Under § 2244(d)(1)(A), that event occurred when the time for seeking discretionary review by the Texas Court of Criminal Appeals expired, 30 days after the day the court of appeals' judgment was rendered.  ***See* Rule 68.2(a), Tex.R.App.P.**  Thus, Carson's judgment became final **October 18, 2002.**  The AEDPA limitations period began running the next day and expired **October 18, 2003.**

Carson's attorney does not dispute that the AEDPA limitations period has expired.  In the Memorandum in support of his § 2254 petition, he asserts entitlement to equitable tolling and argues that this habeas application would have been pursued sooner but for Carson's impaired mental health status.  He has submitted 295 pages of medical records from the TDCJ-CID which he asserts relate to Carson's chronic, undifferentiated schizophrenia.  He states that, on multiple occasions over the years, Carson has been unstable and subject to decompensation, despite supervision and medication regimens.  An affidavit from Dr. Joann Murphrey has been submitted, which shall be discussed in detail below.  Carson's attorney argues that Carson's mental status hampered his ability to comply with the filing rules and entitle him to equitable tolling.

The AEDPA limitations period is not jurisdictional and, thus, is subject to equitable tolling.  ***Holland v. Florida*, 130 S.Ct.**

---

[1]The other three triggering events are (1) removal of a government-imposed impediment to filing, (2) recognition of a new right by the Supreme Court, and (3) discovery of the facts in support of the claim.

2549, 2560, 177 L.Ed.2d 130 (2010); **_Mathis v. Thaler_**, 616 F.3d 461, 474 (5th Cir. 2010).   A petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.  **_Holland v. Florida_**, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130.  The diligence required for equitable tolling purposes is reasonable diligence.  **_Id._**, at 2565.  The petitioner bears the burden of establishing entitlement to equitable tolling.  **_United States v. Petty_**, 530 F.3d 361, 365 (5th Cir. 2008).

Mental incompetency might serve as a basis for equitable tolling of the AEDPA's limitations period.  **_See Fisher v. Johnson_**, 174 F.3d 710, 715 (5th Cir. 1999).  The petitioner bears the burden of proving rare and exceptional circumstances justifying such tolling and must diligently pursue habeas relief.  **_Smith v. Kelly_**, 301 Fed.Appx. 375, 377 (5th Cir. 2008).  He must make a factual showing of mental incapacity.  **_Lawrence v. Florida_**, 549 U.S. 327, 337 (2007).

## Medical Evidence

What follows is an extensive review of Carson's medical evidence.  Dr. Murphrey, a clinical psychologist, testified that, based upon the information provided to her, it was her opinion that Carson suffers from a serious mental disorder, specifically chronic schizophrenia that manifests with disorganized cognitive functions and severe deficits in adaptive behavior and functioning.  She

stated that individuals having the deficits associated with disorganized type schizophrenia typically do not seek treatment voluntarily and may not have documentation supporting the nature and extent of their disability.  Dr. Murphrey explained that undifferentiated schizophrenia overwhelmingly is a life-long disability that would continuously affect the person involved.  According to Dr. Murphrey, research indicates that medications improve symptoms, but do not "repair" the underlying neurological basis of the symptoms.

The earliest TDCJ-CID medical records are health evaluations in October and November 2001 indicating that, psychiatrically, Carson's thought processes were logical.  He was oriented to person, place and time.  His emotional state was social.  In March 2002, while housed at the Robertson Unit, Carson was seen at his cell by a mental health provider who indicated that Carson voiced no current problems, was in no apparent distress, and appeared stable.  A TDCJ Health Evaluation in August 2004 indicated that, psychiatrically, Carson's thought processes were organized.  He was oriented to person, place and time.  His emotional state was social.  A medical record dated October 7, 2004 refers to a psychotic disorder not otherwise specified.  In October 2004 and in early and mid-November 2004, Carson's appearance and behavior were within normal limits and he was stable.  However, a report of November 18, 2004 states that he was refusing his medication and his condition was deteriorating.  Carson was hearing voices, and his thinking was illogical and delusional.

A report for November 22, 2004 indicates that Carson was transferred to the Montford Psychiatric Unit. He remained there until April 2008. One of the medications listed, Haloperidol, is used to treat schizophrenia. He was not very cooperative during his interview on November 24, 2004, and did not make much eye contact. Carson admitted to hearing voices and stated that he hears demons talking to him, and they tell him to kill himself. Also, he heard demons talking to him about God. Carson was alert but not oriented to time, place, and person. His mood appeared depressed, and his affect was constricted. Thought processes showed some looseness of association. Carson was not taking his medication, and it was felt he was decompensating.

On January 14, 2005, Carson refused his medication and his condition deteriorated. Carson was stated to be compliant with his medications on February 24, 2005 and on March 31, 2005. At the latter time, he reported hearing voices. He was alert and oriented to person, place and contents of conversation. His memory was fair. There was no agitation or retardation noted. Carson's affect was bright. His thought process was logical and goal directed. He reported no delusions, or homicidal or suicidal ideation. His insight was limited, and his judgment was fair. In April 2005, Carson agreed to take compelled medications. His appearance was average, he was smiling, his mood was euthymic, his behavior was cooperative and his speech was appropriate.

In May 2005, Carson was alert and oriented to person, place and contents of conversation. His memory was fair with no

6

agitation or retardation noted.  Carson's mood was euthymic, his affect was inappropriately happy, his thought process was disorganized, he had no hallucinations, delusions, homicidal or suicidal ideation, and his insight and judgment were fair.  He was medication compliant as of May 26, 2005.  On August 16, 2005, Carson denied hallucinations and delusions.  His orientation was intact, his mood was euthymic, his affect was bright, his thought process was disorganized, and his social judgment was impaired.  He was non-compliant with his medications as of August 18, 2005.

On February 28, 2007, Carson refused to attend the evaluation with his treatment team.  He was, however, compliant with his medication.  A note dated February 27, 2007 states that he takes his shot regularly.  On April 24, 2007, Carson refused to be seen.  The next day, he refused evaluation with his treatment team.  On June 20, 2007, Carson refused evaluation with his treatment team.  He was evaluated at his cell.  It was reported that he takes his medications.  Carson's mood and affect were silly.  His sensorium was intact to place and situation.  His intelligence was determined to be low average to borderline.  He denied suicidal or homicidal ideation.

As of August 7, 2007, Carson was compliant with his medication injections.  He denied hallucinations and delusions.  However, on August 15, 2007, he refused to be seen.  On October 18, 2007, Carson stated that he did not need his medication.  He had no insight into his condition.  On November 20, 2007, Carson refused his medication and reported no insight into his illness.  The

report reflects that, historically, he quickly decompensates when not medicated. The staff reported significant negative symptom complex and noted generally that Carson was spending a significant amount of time in bed and was not compliant with staff. He denied suicidal or homicidal ideation, as well as hallucinations or delusions. Insight and judgment were poor. As of December 14, 2007, Carson was alert and oriented times three. His mood was euthymic, and affect was inappropriate. His thought was focused. He denied audio/visual hallucinations. Carson denied delusions or thoughts of "demons" as noted in the past. His insight was poor, and his judgment was impaired.

On January 10, 2008, at Montford, Carson stated that he did not want his medication because he did not need it. His mood was euthymic to elevated, and his affect was inappropriate. Carson's thought was focused. He denied suicidal or homicidal ideations, as well as audio/visual hallucinations. Insight was poor, and judgement was impaired. In February 2008, he inappropriately smiled at the interviewer throughout the interview. His mood was euthymic, and his affect was reactive and inappropriate. Carson's thought was focused and goal-directed. He responded minimally, but appropriately to questions. Carson denied any auditory or visual hallucinations, and any suicidal and/or homicidal ideations. He reported no paranoid thinking. Insight was poor, and judgment was limited. On February 7, 2008, he was reported to be compliant and cooperative. On April 1, 2008, Carson was oriented times three, euthymic, bright, unkempt, and withdrawn.

8

As of April 21, 2008, he had achieved the maximum benefit of the in-patient program.  While his mood and affect were silly, his sensorium was intact.  Carson's intelligence was judged to be average.  He reported no suicidal or homicidal ideations, and no hallucinations or delusions.   On April 23, 2008, Carson was transferred from Montford to the Robertson Unit and was alert, oriented and cooperative.

On April 29, 2008, Carson appeared stable in his current environment.  His grooming and house were acceptable.  His behavior was calm, his mood was within normal limits, and his affect was appropriate.   Thought processing was logical.   There were no reported nor noted hallucinations or delusions.   Carson's perceptions were intact.  His judgment and insight were fair, and his memory was intact.  A mental health evaluation in May 2008 indicated no delirium or psychosis.  Carson was alert and oriented times four.  His grooming was acceptable, and his behavior was calm and cooperative.  Carson's mood was within normal limits, and his affect was appropriate.  Thought processing was logical and goal oriented.  No hallucinations or delusions were noted or reported. Carson's judgment and insight were fair, and his memory was intact. He did not present with any mental health needs.

A June 2008 report again indicated he was alert, oriented and cooperative.  He appeared stable in his current environment.  His grooming and house were acceptable.   His behavior was calm and cooperative, his mood was within normal limits, and his affect was appropriate.  Thought processing was logical and goal oriented.

There were no reported nor noted hallucinations or delusions. Carson's perceptions were intact. His judgment and insight were fair, and his memory was intact.

In a Mental Health Evaluation dated August 8, 2008, Carson was alert and oriented times four. His grooming and house were neat and clean. His behavior was calm and cooperative, and his affect was appropriate. Thought processing was logical. There were no reported nor noted hallucinations or delusions. Carson's perceptions were intact. His judgment and insight were fair, and his memory was intact. In September 2008, Carson was alert and oriented times four. His appearance was neat and clean, and his behavior was calm and cooperative. Carson's mood was within normal limits, and his affect was appropriate. Thought processing was logical and goal direct. No hallucinations or delusions were noted or reported. Carson's judgment and insight were fair, and his memory was intact. He was assessed as being stable in the current environment. In a note dated October 8, 2008, Carson appeared stable in his current environment. He was alert and oriented times four. His grooming and house were acceptable. He was calm and cooperative. His mood was within normal limits, and his affect was appropriate. Carson's thought processing was logical. There were no reported nor noted hallucinations or delusions. His judgment and insight were fair, and his memory was intact.

On December 31, 2008, while Carson was housed at the Robertson Unit, complaints were lodged about his foul body odor, messy appearance, dirty cell, and refusal to communicate. On January 9,

2009, Carson was alert and oriented times four.  His grooming was disheveled, and his house was messy.  He was calm, and affect was appropriate.  Carson's thought processing was logical.  He reported no hallucinations or delusions.  His perceptions were intact.  His judgment and insight were fair, and his memory was intact.  On January 23, 2009, it was reported that Carson's paranoid delusions were increasing with complete denial that he may have a mental illness.  He was refusing his medication.  It was agreed to transport him back to the Montford Psychiatric Unit.

On February 19, 2009, Carson refused to speak with a social worker and refused treatment.  The social worker was unable to assess his condition but stated that he had little to no insight. A nursing note of March 11, 2009 states that Carson had not showered in over 10 days.  On April 21, 2009, Carson refused to speak.  His ability to orient could not be determined, and his mood was dysphoric.  His affect was blunted, and he exhibited poor hygiene.  His thoughts were bizarre, and his behavior was withdrawn.  A note dated April 24, 2009 states that Carson has been refusing oral medications and has progressively decompensated.  He exhibited limited speech and thought content. His judgment and insight were poor.  Carson had not showered in many days and had become more withdrawn.  On May 21, 2009, Carson refused his Haldol Decanoate injection.  The next day, he took "compelled injection after verbal intervention, without team or force needed."

A psychiatric note dated July 16, 2009 indicates that Carson remained psychotic without insight into his illness.  He had

improved somewhat with scheduled Haldol Decanoate injections but had refused injection since it was due on July 10th. Dr. Dana Butler stated that, if a second provider agrees, the injection would be compelled, by force if necessary. On October 8, 2009, a progress note indicates that Carson refused his shower and medication. He laughed inappropriately. Medication compliance was reported as sporadic. On November 5, 2009, it was reported that Carson was noncompliant with his medication.

In January 2010, during a mental health in-patient psychiatric follow-up, Carson denied hearing voices or other symptoms of thought disorder and denied having mental illness or a need for medication. A report of January 7, 2010 states that he has no insight into his illness and was at high risk for decompensation due to medication noncompliance. On April 28, 2010, he was oriented times two, and his mood was euthymic. His affect was appropriate and his appearance was unkempt. He was cooperative with maximum prompts. He refused to come out of his cell and demonstrated little or no insight into his illness.

A Mental Health Evaluation at the Bill Clements Unit dated June 30, 2010 indicates that Carson was admitted to Step Down, Chronically Mentally Ill on June 28, 2010. Findings indicated that he presented as psychiatrically stabilized. Carson demonstrated no insight regarding his psychiatric illness or his need for treatment. He denied thoughts of harm to himself and others. It was determined to provide therapeutic support with goals of medication compliance and psychiatric stabilization. On September

12

29, 2010, Carson presented with a euthymic mood and calm/relaxed affect.  He was alert, oriented and cooperative.  His thought processing was linear and goal directed.  There was no observable evidence of psychosis.  Carson's judgment and insight were impaired, and his memory was fair.

In October 2010, Carson was oriented times three, and his thought processes were organized and logical.  His emotional state was social.  Carson again denied that he needed medication.  On October 7, 2010, he refused his monthly injection.  At that time, there was no evidence of possible delirium, no evidence of any psychosis, and no evidence of any major depression.  Carson was alert and oriented, and had no problems with mood or affect.  He had no problems with thought processing.  His intelligence was judged to be below average.  Judgment and insight were poor.

In December 2010, Carson stated that he did not need the medication, and asked for the shots to be stopped.  He denied having a mental illness.  He was oriented times three, his appearance was appropriate for the unit, his behavior was cooperative and polite, his mood and affect were mildly grandiose, his thought processes were intact, his thought content was circumstantial, he had no suicidal/homicidal ideations, cognition was intact, and insight and judgment were fair.  It was determined that Carson was stable, so there was no reason to alter the current psychiatric medication regimen.  It was felt that the risk of clinical deterioration outweighed Carson's request to omit medication.

## Analysis

Carson is required to present "meaningful evidence" of mental incompetency. *See Demosthenes v. Baal*, 495 U.S. 731, 736 (1990); *Whitmore v. Arkansas*, 495 U.S. 149, 166 (1990).  He must present facts sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to his mental competency. *Dunn v. Johnson*, 162 F.3d 302, 306 (5th Cir. 1998). His threshold burden is "extremely heavy" and requires a showing by clear and convincing evidence. *Miller-El v. Johnson*, 261 F.3d 445, 454 (5th Cir. 2001), *reversed on other grounds, Miller-El v. Dretke*, 545 U.S. 231 (2005).

Carson argues that he has had mental health issues from approximately 1997 through 2009.  As noted in this Court's Order directing the submission of medical records, this time period encompasses the time of his jury trial in July 2001.  Yet, Carson did not complain in state court, and does not present as an issue for review in this § 2254 petition, that he was mentally incompetent at the time of trial.  The TDCJ-CID medical records establish that Carson has been diagnosed, primarily, with schizophrenia, disorganized type.  However, that fact did not render him incompetent at trial and does not render him incompetent for purposes of equitable tolling of the AEDPA limitations period.

As noted above, Carson will be entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in

14

his way and prevented timely filing.  *Holland v. Florida*, 130 S.Ct. at 2562.  The first element will be difficult to prove.  Carson's conviction was affirmed by the Texas Fourth Court of Appeals on September 18, **2002**.  He pursued no legal remedies to set aside his conviction until February 17, **2011**, more than eight years later, when he filed a state habeas application under Article 11.07 of the Texas Code of Criminal Procedure.

Carson has made no effort to show that he has prosecuted his rights diligently.  Instead, presumably, he is attempting to show, through his TDCJ-CID medical records, that he was mentally incompetent throughout that entire time--September 2002 to February 2011--and was unable to appreciate and comply with the AEDPA filing requirements.  Our court of appeals has held that, if the medical records "leave[] more than a full year of 'AEDPA time,'" equitable tolling based upon his mental status will be refused.  *See Hulsey v. Thaler*, 421 Fed.Appx. 386, 391 (5th Cir. 2011).

For several reasons, Carson's medical records fail to support Carson's claim to mental incompetence from September 2002 until February 2011.  In March 2002, Carson was seen at his cell by a mental health provider who indicated that Carson voiced no current problems, was in no apparent distress, and appeared stable.  The next medical record is a TDCJ Health Evaluation dated **August 2004**.  It indicates that, psychiatrically, Carson's thought processes were organized.  He was oriented to person, place and time.  His emotional state was social.  Critically and conclusively, no

medical evidence even exists to suggest what Carson's mental condition was between September 2002 and October 2003 when the AEDPA limitations expired.  That fact alone dooms his claim to equitable tolling.

Undoubtedly, Carson will point to the affidavit of Dr. Murphrey who testified that individuals having the deficits associated with disorganized type schizophrenia typically do not seek treatment voluntarily and may not have documentation supporting the nature and extent of their disability.  Presumably, Carson will argue that no records exist between September 2002 and October 2003 because he did not seek treatment for his illness. Dr. Murphrey's opinion can be discounted for three reasons.  First, as previously noted, Carson was apparently not mentally incompetent during his trial in July 2001 despite his mental illness.  At some point thereafter, his condition became aggravated.  Dr. Murphrey does not identify when this occurred.  On the other hand, the medical records do reflect a starting date--around mid-November 2004, more than a year after the expiration of the AEDPA limitations period.

Second, as is abundantly evident from the TDCJ-CID medical records, Carson's illness was apparent to prison personnel whether or not he sought treatment.  He would refuse his medication, failed to take showers for many days, failed to clean his cell, failed to cooperate with his treatment team, and often failed to communicate.  From November 2004 until December 2010, the TDCJ-CID

medical records are replete with treatment records of Carson. Much of his treatment was imposed against his will.

The third and final reason for rejecting Dr. Murphrey's opinion concerns the fact that she never rendered an opinion regarding Carson's competence. She reviewed his medical records and made general observations about persons with his condition. At no point did she attest that he was mentally incompetent at any time between September 2002 and February 2011. The affidavit of Dr. Murphrey is not probative on the reason that records do not exist to substantiate Carson's illness between September 2002 and October 2003. Nor does it tend to establish that he was incompetent at any time between September 2002 and February 2011.

While the failure to establish that Carson was mentally incompetent between September 2002 and October 2003 is determinative, the Court will evaluate additional evidence that undermines his claim to equitable tolling. In the Order directing Carson to submit medical records, he was advised that it would not be enough that his mental status was compromised temporarily or on occasion. *See Hulsey*, 421 Fed.Appx. at 390 (court examined times petitioner was well and times he was not well in determining whether he was competent for sufficient amount of time to meet the AEDPA deadline). The medical records show that Carson's condition often fluctuated, which included periods of arguable incompetence and periods where his thought processes were logical and goal oriented.

From mid-November 2004, when he was transferred to the Montford Psychiatric Unit, to the end of March 2005, medical records reflect that Carson had refused his medication and his condition was deteriorating. He was hearing voices, and his thinking was illogical and delusional. However, by March 31, 2005, he was medication compliant and, though he still reported hearing voices, he was alert, oriented, and his thought process was logical and goal directed. In May 2005, Carson remained alert and oriented. Carson's thought process was disorganized but his insight and judgment were fair. His condition remained the same as of August 2005, and no medical records for 2006 have been submitted.

Although he was not cooperative with his treatment team through much of 2007, he remained medication compliant. Not until November 2007 did his condition begin to deteriorate. Insight and judgment were poor, and his affect was inappropriate through January 2008. On February 7, 2008, he was reported to be compliant and cooperative. On April 23, 2008, Carson was transferred from Montford to the Robertson Unit. A mental health evaluation in May 2008 indicated no delirium or psychosis. Carson was alert and oriented times four. Thought processing was logical and goal oriented, and his judgment and insight were fair. He did not present with any mental health needs. Reports of June, August, September and October 2008 indicated similar findings.

By the end of the year, Carson's condition was deteriorating again. On January 23, 2009, it was reported that his paranoid

18

delusions were increasing with complete denial that he may have a
mental illness.  He was refusing his medication.  He was
transported to the Montford Psychiatric Unit.  His thoughts were
bizarre, and his behavior was withdrawn.  A note dated April 24,
2009 states that Carson had progressively decompensated.  Records
through the remainder of 2009 indicate continuing difficulties with
medication compliance.  A report of January 7, 2010 states that he
has no insight into his illness and was at high risk for
decompensation due to medication noncompliance.

Carson seemed to have improved by June 30, 2010 at the Bill
Clements Unit.  His thought processing was linear and goal
directed, and there was no observable evidence of psychosis, though
his judgment and insight were impaired.  On September 29, 2010, he
was alert, oriented and cooperative.  His thought processing was
linear and goal directed, and there was no observable evidence of
psychosis.  Still, Carson's judgment and insight were impaired.  In
October 2010, Carson was oriented times three, and his thought
processes were organized and logical.  On October 7, 2010, he
refused his monthly injection.  At that time, there was no evidence
of possible delirium, no evidence of any psychosis, and no evidence
of any major depression.  Carson was alert and oriented, and had no
problems with thought processing.

In December 2010, Carson stated that he did not need
medication, and asked for the shots to be stopped.  He denied
having a mental illness.  He was oriented times three, his
appearance was appropriate for the unit, his behavior was

cooperative and polite, his mood and affect were mildly grandiose, his thought processes were intact, cognition was intact, and insight and judgment were fair.  It was determined that Carson was stable, so there was no reason to alter the current psychiatric medication regimen.

In summary, the medical records fail to present any evidence of mental incompetence from September 18, 2002 until mid-November 2004, a period of 26 months.  While Carson was arguably incompetent from November 2004 until the end of March 2005, it appears he became competent again around April 1, 2005 and remained so until November 2007, a period of 19 months.  The fact that he was hospitalized at the Montford Psychiatric Unit during this time does not render him incompetent.  *See Hulsey*, 421 Fed.Appx. at 390.  He regained his stability in February 2008 with logical and goal oriented thinking until December 31, 2008, a period of 11 months. The medical evidence suggests incompetence from January 2009 through June 2010.  However, from that date through the rest of the year, a period of 6 months, Carson appeared to be mentally competent.

The medical records leave over 5 years of AEDPA time after September 18, 2002, during which Carson was not mentally incompetent and was capable of pursuing legal challenges to his conviction.  *See Hulsey*, 421 Fed.Appx. at 391.  Carson bore the burden of proving that mental incompetence justified equitable tolling.  *Smith*, 301 Fed.Appx. at 377.  He has not met that burden.

20

Because he did not pursue legal challenges to his conviction during the five years when he was competent to do so, he is not entitled to equitable tolling.

## **Recommendation**

It is, therefore, the recommendation of the Magistrate Judge that Carson's § 2254 habeas application be **DISMISSED**.

Jurists of reason would not find debatable this Court's ruling that Carson's § 2254 habeas petition was untimely filed, and he is not entitled to equitable tolling based upon mental incompetency. It is further recommended that a certificate of appealability be **DENIED**.

## **Instructions for Service and**
## **Notice of Right to Object**

The District Clerk shall serve a copy of this Memorandum and Recommendation on all parties either electronically or by mailing a copy by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), Fed.R.Civ.P., any party who desires to object to this Memorandum and Recommendation must serve and file specific written objections within 14 days after being served with a copy. ***Such party shall file the objections with the District Clerk and serve the objections on all other parties and the Magistrate Judge.*** A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days after being served with a copy shall bar that

21

party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of factual findings and legal conclusions to which the party did not object, which were accepted and adopted by the District Court. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985); ***Douglass v. United Services Automobile Association***, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED** November 16, 2011.

_____
JOHN W. PRIMOMO
UNITED STATES MAGISTRATE JUDGE